IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND MATHIS, AIS #140252, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO.1:08-CV-277-MEF [WO] |
| SHERIFF ANDY R. HUGHES, et al., | ) ) ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This cause of action is pending before the court on a 42 U.S.C. § 1983 complaint filed on April 9, 2008 by Raymond Mathis ["Mathis"], an inmate currently incarcerated in the state prison system and frequent litigant before this court. In the instant complaint, Mathis asserts the defendants lodged a false sanction against him and deprived him of due process with respect to the punishment imposed for this sanction. Mathis names Andy R. Hughes, the sheriff of Houston County, Alabama, Keith W. Reed, commander of operations at the Houston County Jail, and Sgt. Kim Turner, officer Zella Jackson, officer Beverly Reynolds and officer Kizzie Foster, correctional officers for the jail, as defendants in this cause of action. Mathis seeks monetary damages and removal of the sanction from his county inmate file. *Plaintiff's Complaint - Court Doc. No. 1* at 4.

The defendants filed special reports and supporting evidentiary materials addressing the claims presented in the complaint. Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. *Order of July 9, 2008 - Court Doc. No. 33*; *Order of August 28, 2008 - Court Doc. No. 39*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the reports/motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district

---

[1] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules. These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to

3

>sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Mathis is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Mathis fails to demonstrate a requisite genuine issue of material fact in order to

preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

**A.  Suit Against Defendants in Their Official Capacities - Absolute Immunity**

To the extent Mathis sues the defendants in their official capacities, they are immune from monetary damages.[2] Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

---

[2]Under all facets of Alabama law, a county sheriff and his correctional staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Relevant Factual History[3]

Mathis possesses an extensive criminal history including voluminous convictions before the state courts of Houston County, Alabama beginning in the 1980's and continuing until the filing of this case.[4] In 2005, Mathis entered the Houston County Jail on a charge of third degree burglary and on an offense for first degree receiving stolen property for which an indictment had issued against Mathis on December 3, 2004. *See Mathis v. Glover, et al.*, Civil Action No. 1:05-CV-1084-MHT-TFM (M.D. Ala. 2008), *Defendants' Exhibit D - Court Doc. No. 18-15* at 1- 4. A grand jury returned an indictment

---

[3] The pleadings before the court indicate that the alleged actions which form the basis of the instant complaint occurred after Mathis' incarceration pursuant to a sentence of confinement imposed by the Circuit Court of Houston County, Alabama arising from his conviction for a criminal offense. Thus, the complaint relates to purported constitutional violations that occurred during Mathis' status as an inmate serving a sentence imposed by a state court. Nevertheless, regardless of Mathis' status in the jail, either as a pre-trial detainee or sentenced inmate, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("[T]he applicable standard [of reviewing claims by pre-trial detainees or convicted prisoners under the Fourteenth Amendment's Due Process Clause] is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.")

[4] The records of this court in the numerous cases filed by Mathis establish his criminal history. This court takes judicial notice of its own records.

against Mathis for the burglary offense on June 10, 2005. *Id.* at 2. This previous court record further demonstrates that Mathis entered a guilty plea to third degree burglary on March 29, 2006 and the trial court imposed a sentence of four (4) years imprisonment for this conviction. The records before the court in the present civil rights action likewise establish Mathis entered a guilty plea to receiving stolen property on November 16, 2005 and received a sentence of three (3) years imprisonment for this offense. *Defendants' Exhibit J - Court Doc. No. 38-2* at 1.[5] The state court awarded Mathis 228 days of jail credit for time served in the county jail on this offense, ordered the sentence split with Mathis to serve 15 months imprisonment with the "balance of [s]aid sentence suspended on the condition of good behavior and payment of fines, costs and restitution for a period of 24 months at $50 per month [to] begin Jan. 15, 2006." *Defendants' Exhibit K - Court Doc. No. 38-3* at 15 and *Plaintiff's Exhibit B to Response - Court Doc. No 40-2*. Mathis subsequently secured his release from confinement on these charges.

On October 31, 2007, the trial court issued an alias warrant of arrest for Mathis in his receiving stolen property case. *Defendants' Exhibit K - Court Doc. No. 38-3* at 5. The court based this warrant on the failure of Mathis to complete various conditions of his suspended sentence. *Id.* On November 1, 2007, law enforcement officials arrested Mathis

---

[5] The trial court did not delineate this sentence as a concurrent sentence, and, therefore, under applicable state law, the sentence at the time of imposition is a consecutive sentence to any other imposed term of incarceration. *Ala. Code* § 14-3-38(a) ("When a convict is sentenced to imprisonment in the penitentiary on two or more convictions, unless it is specifically ordered in the judgment entry that such sentences be served concurrently, such sentences shall be cumulative and shall be served consecutively ... beginning on the expiration of the preceding term."). Thus, the sentence for receiving stolen property ran consecutive to all prior sentences imposed upon Mathis.

on several charges of third degree burglary and returned him to the Houston County Jail. On November 7, 2007, Mathis was arrested on the alias warrant while incarcerated at the Houston County Jail. *Id*. at 7. On February 20, 2008, the court determined Mathis had "willfully failed and refused to pay his fines and costs" with respect to the conditions pertaining to suspension of his receiving stolen property sentence and therefore ordered Mathis to "serve his fines and costs associated" with this conviction in the Houston County Jail. *Id*. The trial court ordered this term of incarceration to last for one year. *Id*. - *(Docket Entry of July 3, 2008)*. It is therefore clear that as of February 20, 2008 Mathis' confinement in the jail related, at least in part, to the sentence imposed for his conviction for receiving stolen property. This sentence had not yet expired as the trial court suspended the remaining split portion of the sentence pending payment of costs and fines. In addition, the four-year sentence imposed on March 26, 2006 for third degree burglary remained in effect.

### C. The False Sanction Claim

On March 24, 2008, defendant Jackson issued a sanction against Mathis for his violation of Rule #4, acting in a disrespectful manner towards jail personnel. Mathis asserts the sanction resulted from false accusations and fabrications by the defendants. The defendants maintain that the sanction occurred solely due to Mathis violation of institutional rules governing inmate behavior. *Defendants' Exhibit 2 (Affidavit of Zella R. Jackson - Court Doc. No. 19-2* at 2 ("[On the morning of March 24, 2008,] [a]fter pulling

the Plaintiff's lock down belongings from his cell, the Plaintiff started calling me a 'Mother-F----r. The plaintiff stated as I walked out of the Pod, 'I can't stand that Mother-F----r, I hate that Mother-F----r.' The Plaintiff continued to yell profanities at me."); *Defendants' Exhibit 3 (Affidavit of Kizzie Foster) - Court Doc. No. 19-3* at 2 ("As I was closing the cell door [after officer Jackson and I had removed Mathis' lockdown property from his cell], I witnessed the Plaintiff calling Corrections Officer Jackson a 'Mother-F----r.' As Corrections Officer Jackson was leaving the Pod, the Plaintiff stated, 'I can't stand that Mother-F----r, I hate that Mother-F----r.' The plaintiff continued to yell profanities as we both left the Pod."). It is therefore clear that the defendants do not admit that the information contained in the sanction is either fabricated or false.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution. The appellate court carefully distinguished its holding from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum, supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the

11

> plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id*. In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.

    *Slocum* controls the disposition of the instant case. The defendants maintain that the information on which they relied in imposing the sanction is correct and an accurate representation of the plaintiff's behavior on March 24, 2008. Moreover, there is no evidence before the court that the defendants relied on information they knew to be false during any stage of the sanction process. Specifically, there is no admission by any of the defendants that the information utilized in levying the sanction against Mathis is false, incorrect or erroneous. The record in this case therefore establishes that the defendants did not rely on ***admittedly*** false information. In light of the foregoing, the plaintiff is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of the defendants on his false sanction claim.

### D. Due Process Claims

1. <u>Failure to Comply with Administrative Policy</u>.  Mathis maintains the defendants deprived him of due process when they failed to provide him a disciplinary hearing on his inmate sanction in violation of the administrative requirements set forth in the rules/policies of the Houston County Jail.  The deny this assertion and maintain the rules do not require a hearing for imposition of the challenged sanction.  Nevertheless, the alleged violation of departmental rules or policies does not assert a violation of plaintiff's constitutional rights.  *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).

2. <u>Placement in Segregation</u>.  Mathis argues the defendants deprived him of due process because they continued his placement in disciplinary segregation for his profane outburst and disruptive behavior without a hearing.[6]  The sanction required that Mathis remain in segregation an additional twenty-one (21) days for this particular offense. Inmates in disciplinary segregation at the Houston County Jail "lose weekly general visitation privileges, loss of commissary privileges, loss of telephone privileges, loss of [general] library privileges as well as the loss of the privilege to participate in ... jail rehabilitative programs.  Inmates in disciplinary segregation are permitted to practice his/her religion of choice, are provided necessary medical treatment, receive the same food as other inmates, are provided mail privileges and are provided other necessities provided to other inmates.  Inmates in disciplinary segregation are also permitted visitation

---

[6]At the time of this incident, Mathis was confined in segregation due to previous rules violations.

privileges with their lawyer(s) [and access to legal materials]...." *Defendants' Exhibit 6*

*(Affidavit of Keith W. Reed) - Court Doc. No. 19-7* at 3.

Defendant Reed further describes the sanction process and nature of confinement in the jail with respect to an inmate's status as follows:

> The "Sanction" system in the Houston County Jail ("Jail") serves and effectuates jail management and inmate safety and security while in the Jail without making an inmate['s] rule violation a part of his/her permanent record with the state prison system. It also provides for the safety of the corrections officers working in the jail as well as other staff of the jail. Incarceration in the Jail necessarily results in the withdrawal or limitation of many rights and privileges enjoyed by persons who are not incarcerated. All of the Jail is a maximum security facility.
> 
> The conditions at the Jail involve significant amounts of "lock down time" even for inmates in the general population. General population inmates are confined to their cells for fifteen (15) hours each day. Other than visitation with their lawyer(s), all visits for all inmates in the Jail are non-contact visits made through glass walls/windows. In the jail, every aspect of all inmates lives whether in general population or in segregation is monitored. All of the cell doors in the Jail are solid metal doors. Jail cells, except in the medical clinic, in both general population areas and segregation areas have windows where inmates can see outside the Jail facility and every cell door has a window allowing inmates to see out into the day room area of the Pod at all times. Inmates in the general population of the jail are permitted to eat in the day room area of each Pod in the jail or in their cells according to the inmate['s] preference.
> \*\*\*
> Segregation resulting from a sanction with a few exceptions mirrors the conditions imposed upon inmates in administrative segregation and protective custody segregation in the Jail....
> 
> Due to the nature of segregation, all inmates in segregation, whether it is protective or disciplinary segregation, receive and eat their meals in their cells. Because of space limitations, inmate Mathis served the segregation made the basis of this case in a two person cell with a cell mate....
> 
> The primary distinctions between a sanction and a disciplinary

> proceeding in the Jail is that sanctions are: (1) usually used as discipline for offenses that are not to be treated as serious offenses for disciplinary proceedings; (2) sanctions are <u>not</u> made a part of the inmate['s] permanent record that is sent to the Alabama Department of Corrections and as such, sanctions do <u>not</u> have the stigma of wrongdoing or misconduct that is associated with more serious disciplinary confinement which is made a part of the inmate['s] permanent records with the state such that the inmate may be placed on lock down in the state prison system and/or may result in the inmate being classified as a higher risk inmate for purposes of facility and housing assignment by the state; and (3) the lock down time resulting from a sanction is more limited than for a disciplinary proceeding against an inmate. As a result, an inmate sanction does not affect the inmate['s] term or duration of confinement with the county or state. Because a sanction is not made a part of an inmate['s] state incarceration record, a sanction does not impact an inmate['s] "good time" credit and does not impact an inmate['s] eligibility for parole. Lock down resulting from a sanction is for a definite period of time not to exceed 21 days. Disciplinary segregation resulting from a disciplinary proceeding usually results in the inmate receiving segregation time up to a maximum of 45 days for each offense with a maximum of 60 days for all violations resulting from a single incident.
>
> The housing for inmates in segregation, whether for sanction, disciplinary, administrative and protective custody, is the same. While on lock down, inmates are allowed out of their cells for one hour each day to bathe and exercise in the day room area of the Pod. During that time inmates are on lock down, whether disciplinary or administrative, inmates can talk to and converse with other inmates in the Pod. When confined to their cells, lock down inmates can talk to each other....

*Defendants' Exhibit 7 (Supplemental Affidavit of Keith W. Reed) - Court Doc. No. 25-1* at 2-4.

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property without due process of law." Thus, the Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court abandoned

15

the former methodology for determining the existence of a liberty interest. Under such previous case law, a federal court ascertained whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language constituted "an unmistakably mandatory character" placing "substantive limitations on official discretion." In its renunciation of this prior case law, the Court held that federal courts must instead look to the nature of the deprivation rather than statutory or regulatory language to determine if a state created a liberty interest.

> Following *Wolff*,[7] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-484 (1995)(footnote added)(citations omitted). Moreover, the Court specifically rejected the contention that any action taken by correctional officials as a punitive measure encroaches upon a liberty interest protected under the Due Process Clause. *Id.* at 484.

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin,* 515 U.S. at 485. The loss of privileges and placement in segregation for a short period of time "though

---

[7]*Wolff v. McDonnell*, 418 U.S. 539 (1974).

concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id.* Moreover, under the facts of this case, the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, Mathis' theory of liability under the law as established in *Sandin* is without merit, and summary judgment is due to be granted in favor of the defendants on the due process claims.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before August 27, 2010 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc*)*, adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 10th day of August, 2010.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE